**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| F2VS TECHNOLOGIES, LLC, | |
| Plaintiff, | C.A. No. 17-754-RGA |
| vs. | JURY TRIAL DEMANDED |
| ARUBA NETWORKS, INC., | |
| Defendant. | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

October 18, 2017

OF COUNSEL:

David Garr
Michelle L. Wallace
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
dgarr@cov.com
mwallace@cov.com

Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Defendant*

ME1 25912805v.1

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 3

    A.    The Asserted Patents ...................................................................................... 3

    B.    The Accused Products and Services ............................................................... 4

    C.    F2VS's Direct Infringement Allegations ....................................................... 5

    D.    F2VS's Induced Infringement Allegations .................................................... 7

III.  ARGUMENT ............................................................................................................. 8

    A.    Applicable Pleading Standard ........................................................................ 8

    B.    F2VS's Direct Infringement Claims Should Be Dismissed ......................... 10

    C.    F2VS's Induced Infringement Claims Should Be Dismissed ....................... 13

IV.   CONCLUSION ......................................................................................................... 17

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*Asghari-Kamrani v. United Servs. Auto. Ass'n*,
 C.A. No. 2:15-cv-478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016) ....................................8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................ 1, 6, 7, 13

*Atlas IP, LLC v. Exelon Corp.*,
 C.A. No. 15-10746, 2016 WL 2866134 (N.D. Ill. May 17, 2016) ..............................8, 9, 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................ 1, 6, 7, 13

*Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*,
 No. CIV.A. 14-6650, 2015 WL 3755223 (E.D. Pa. June 15, 2015) ......................... 10, 13, 14

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997)....................................................................................... 7, 12

*Endo Pharms. Inc. v. Actavis Inc.*,
 C.A. No. 14-1381-RGA, 2015 WL 5580488 (D. Del. Sept. 23, 2015), *report and
 recommendation adopted*, C.A. No 14-1381-RGA, 2015 WL 7253674 (D. Del.
 Nov. 17, 2015) .................................................................................................................10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009)........................................................................................11

*F2VS Techs., LLC v. Qualcomm Techs., Inc.*,
 C.A. No. 17-cv-007556-UNA (D. Del. Jun. 13, 2017) .......................................................13

*F2VS Techs., LLC v. Ruckus Wireless*,
 C.A. No. 17-cv-00756-RGA (D. Del. Jun. 13, 2017) .........................................................13

*Fifth Market, Inc. v. CME Grp., Inc.*,
 C.A. No. 08-520 GMS, 2009 WL 5966836 (D. Del. May 14, 2009) ....................................10

*IP Commc'ns Sols., LLC v. Viber Media (USA) Inc.*,
 C.A. No. 16-134-GMS, 2017 U.S. Dist. LEXIS 51770 (D. Del. Apr. 5, 2017)....................10

*M2M Solutions LLC v. Telit Commc'ns PLC*,
 C.A. No. 14-1103, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ............................................13

*Macronix Int'l Co. v. Spansion Inc.*,
 4 F. Supp. 3d 797 (E.D. Va. 2014) .....................................................................................9

*McRo, Inc. v. Rockstar Games, Inc.*,
 C.A. No. 12-1513-LPS-CJB, 2014 WL 1051527 (D. Del. Mar. 17, 2014).........................7, 8

ii

*Medsquire LLC v. Spring Medical Systems Inc.*,
   No. 2:11–cv–04504–JHN–PLA, 2011 WL 4101093 (C.D. Cal. Aug. 31, 2011) ....................8

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................................7

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012) ..............................................................................13

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
   No. CV 13-2052-LPS, 2014 WL 4675316 (D. Del. Sept. 19, 2014) ....................................13

*Network Managing Solutions, LLC v. AT&T INC. et al.*,
   C.A. No. 1:16-cv-00295-RGA, 2017 WL 472080 (D. Del. Feb. 3, 2017) ...........................11

*Pragmatus AV, LLC v. Yahoo! Inc.*,
   C.A. No. 11-902-LPS, 2012 WL 6044793 (D. Del. Nov. 13, 2012), report and
   recommendation adopted sub nom ....................................................................................8

*Pragmatus AV, LLC v. Yahoo! Inc.*,
   C.A. No. 11-902-LPS-CJB, 2013 WL 2295344 (D. Del. May 24, 2013) ................................8

*Raindance Techs., Inc. v. 10X Genomics*,
   C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ........................... 7, 8, 9, 10

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ...........................................................................................6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) .........................................................................................................8

*Ziemba v. Incipio Techs, Inc.*,
   No. 13-5590 (JLL), 2014 WL 4637006 (D.N.J. Sept. 16, 2014) ...........................................9

ME1 25912805v.1

## I.     INTRODUCTION

In its original Complaint (D.I. 1) filed on June 14, 2017 ("Original Complaint") Plaintiff F2VS Technologies, LLC ("F2VS") alleged that Defendant Aruba Networks, Inc. ("Aruba") infringed Claim 1 of each of U.S. Patent Nos. 7,379,981 ("the '981 Patent"), 8,700,749 ("the '749 Patent"), and 8,855,019 ("the '019 Patent") (collectively, the "Asserted Patents"). Pursuant to Rule 12(b)(6), Aruba Networks, Inc. ("Aruba") moved to dismiss F2VS's Original Complaint for failure to state a claim (D.I. 8) because F2VS's sparse infringement allegations failed to satisfy the basic pleading standards of Fed. R. Civ. P. 8(a), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than oppose that motion, F2VS filed an Amended Complaint (D.I. 11), reasserting Claim 1 of each of the Asserted Patents with little more than the addition of a brief quote, repeated for each of the Asserted Patents. F2VS's added allegations fail to address each of the deficiencies identified by Aruba. Moreover, F2VS's new allegations are equally superficial and fail to remedy the fundamental pleading deficiency: F2VS does not plausibly allege that Aruba sells or that its customers use an infringing network of nodes and gateways arranged as required by the claims.

First, F2VS's Amended Complaint does not allege facts sufficient to support a plausible claim of direct infringement by Aruba. Although F2VS states that Claim 1 of each of the three Asserted Patents relates to a self-configuring wireless *network* that includes a particular arrangement of nodes and gateways, the "Accused Products and Services" identified in the Amended Complaint are certain Aruba *outdoor and indoor wireless routers*; not a network of nodes and gateways configured in the manner required by the claims. Compounding this deficiency, the Amended Complaint, like the Original Complaint before it, is devoid of any allegation about how the accused wireless routers could be combined to satisfy the network limitations of the three asserted claims.

1

Although F2VS now alleges that Aruba's "mesh routers" are akin to the claimed "gateway," there is no allegation as to how these "mesh routers" are "communicatively coupled" to a network of nodes and an external network to provide a path of communication between the two, as recited in the claims. Likewise, F2VS appears to allege that "Access Points" comprise the claimed "nodes," but fails to allege what Aruba product is akin to either the "Access Points" or the "nodes." Nor does F2VS allege how the unidentified Aruba products are incorporated into a self-configuring wireless network and organized to communicate with each other in a particular manner. Because the Amended Complaint, like the Original Complaint, fails to identify (i) a wireless network sold by Aruba in the claimed configuration and (ii) how the individual accused Aruba products could even be arranged to form such a network, the Amended Complaint similarly fails to state a claim for direct infringement.

Second, F2VS's Amended Complaint fails to remedy the deficiencies of the Original Complaint and does not allege facts sufficient to support a plausible claim of indirect (induced) infringement by Aruba. F2VS's allegations are identical to those in its Original Complaint with the meager clarification that "customers that have purchased and/or used the Accused Products and Services, constitute direct infringers." The Amended Complaint, just like the Original Complaint, fails to identify: (i) any direct infringer; (ii) any specific acts of direct infringement, e.g., use of an allegedly infringing, self-configuring wireless network by any named Aruba customer; or (iii) facts to support its claims that Aruba is acting with a specific intent to induce its customers to infringe the patents, as opposed to merely having post-Complaint knowledge of the patents.

Moreover, F2VS does not address or acknowledge that Aruba has not sold or offered for sale the Accused Products since at least the date of the Original Complaint, as Aruba explained in its original Opening Brief in Support of its Motion to Dismiss (D.I. 9). F2VS

2

also fails to allege any pre-suit knowledge of the Asserted Patents and its post-Complaint "intent" allegations are mere boilerplate, alleging that Aruba "encouraged, instructed, enabled, and otherwise caused Aruba's customers to use the Accused Products and Services in an infringing manner. . . ." These allegations are insufficient at least because they fail to allege that Aruba is acting with specific intent to induce its customers to infringe the patents. As with its direct infringement claims, F2VS's threadbare allegations lack sufficient detail to state a plausible claim for induced infringement and, therefore, they should be dismissed.

## II.     STATEMENT OF FACTS

### A.     The Asserted Patents

F2VS's Amended Complaint only alleges that each of the Asserted Patents were duly issued and are owned by F2VS, (Am. Compl. ¶ 10), and asserts Claim 1 of each Asserted Patent (*id.* at ¶¶ 13, 19, and 25). The Asserted Patents are attached to the Amended Complaint as Exhibits A, B and C. According to the shared Abstract of the three Asserted Patents, they disclose and relate to a "meter" that is enabled for wireless communication in a network. (*See, e.g.*, Am. Compl., Ex. A at Abstract). The specification goes on to provide further detail regarding the meter:

> More specifically, this invention relates to *a meter, such as a utility meter*, that is enabled for wireless communication. The invention also relates to a self-configuring, wireless network that enables data capture at a plurality of metering sites and wireless transmission of the captured data from the plurality of metering sites to one or more collection points.

(*Id.* at 1:19-26 (emphasis added)).

F2VS describes Claim 1 of each of the Asserted Patents identically in a single sentence as a "self-configuring wireless network that incorporates a group of virtual nodes coupled to a gateway to provide a communication access point between the nodes and an external network (remote control via internet or other network)." (Am. Compl. ¶¶ 13, 19, and 25). Though the asserted claims recite differing claim elements and have different claim

3

scope, F2VS recites only that each asserted claim relates to a "wireless network" that includes (i) groups of wireless "nodes" that communicate among each other to "self-configure" into a network and (ii) "gateways" or "virtual gates" that are "communicatively coupled" to the network of nodes and an "external network" to facilitate communication between the network of nodes and the external network.

## B.    The Accused Products and Services

F2VS's allegations regarding the accused Aruba products are equally thin. The Amended Complaint does not identify any self-configuring wireless networks or any network of nodes communicatively coupled to a gateway, which in turn is communicatively coupled to an external network.  Instead, the Amended Complaint defines the allegedly infringing products as:

> The following products (collectively, the "Accused Products and Services") from the Aruba AirMesh Product Portfolio of outdoor and indoor wireless routers for mesh and point-to-multipoint connections, including the following models: MSR1200, MSR2000, MSR4000, and MST200.

(Am. Compl. ¶ 11).  These products are wireless routers sold by Aruba and have not been sold or offered for sale by Aruba since at least the date of the Original Complaint, as confirmed by Aruba's own website.   Indeed, the site's "End of life" page (http://www.arubanetworks.com/support-services/end-of-life/) shows all of the accused products as discontinued and no longer sold.  (Ex. I at 14–15; *see also* Exs. J–N).[1]  The

---

[1]      The "Wireless Mesh Routers" section of Exhibit I lists all of the accused products as discontinued and no longer sold.  The accused MSR1200 was last sold or offered for sale on October 31, 2014.  *See* Ex. I at 14 (identifying this as the "end of sale last order date" for the MSR1K2); Ex. J, "End-of-Sale Announcement for the MSR1K2 Access Point," *available at* http://www.arubanetworks.com/assets/support/EOS_MSR1K2.pdf (confirming that MSR1K2 refers to the Aruba's "MSR1200" products).

4

Amended Complaint does not provide any further detail regarding the relevant functionality of the Accused Products and Services and only supplements this product identification with reference to Exhibits D–G attached to the Amended Complaint (which are printouts of other portions of Aruba's website).

### C.    F2VS's Direct Infringement Allegations

Based on these threadbare allegations regarding the Asserted Patents and Accused Products and Services, F2VS asserts three patent infringement claims against Aruba, with each claim corresponding to a different patent and containing nearly identical allegations of direct and induced infringement.  Those allegations are addressed in turn.

Paragraphs 13, 19, and 25 of the Amended Complaint constitute the entirety of F2VS's allegations of direct infringement, and the three paragraphs are substantially the same.  Importantly, these paragraphs do not include allegations about how the accused routers relate to or meet the limitations of claim 1 for each of the Asserted Patents.  Instead,

---

The accused MSR2000 was last sold or offered for sale on April 30, 2017.  *See* Ex. I at 14 (identifying this as the "end of sale last order date" for the MSR2KP); Ex. K, "End-of-Sale Announcement for: MSR2KP: All Variants," *available at* http://www.arubanetworks.com/assets/support/EOS_MSR2KP.pdf (confirming that MSR2KP refers to Aruba's "MSR2000" products).

The accused MSR4000 was last sold or offered for sale on April 30, 2017.  *See* Ex. I at 14 (identifying this as the "end of sale last order date" for the MSR4KP); Ex. L, "End-of-Sale Announcement for: MSR4KP: All Variants," *available at* http://www.arubanetworks.com/assets/support/EOS_MSR4KP.pdf (confirming that MSR4KP refers to Aruba's "MSR4000" products).

The accused MST200 was last sold or offered for sale on April 30, 2017.  *See* Ex. I at 14 (identifying this as the "end of sale last order date" for the MST2HAC and MST2HP); Ex. M, "End-of-Sale Announcement for: MST2HAC: All Variants," *available at* http://www.arubanetworks.com/assets/support/EOS_MST2HAC.pdf (confirming that MST2HAC refers to Aruba's "MST200" products using AC Power); Ex. N, "End-of-Sale Announcement for: MST2HP: All Variants," *available at* http://www.arubanetworks.com/assets/support/EOS_MST2HP.pdf (confirming that MST2HP refers to Aruba's "MST200" products using Power over Ethernet ("PoE")).

5

the Amended Complaint repeats boilerplate language that "Aruba has infringed and continues to infringe [the Asserted Patents], either literally or under the doctrine of equivalents, through the manufacture and sale of infringing products under the Aruba AirMesh brand, and other product lines" and that Aruba "ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises devices that form a self-configuring wireless network that incorporates a group of virtual nodes *(Access Points)* coupled to a gateway *(mesh routers)* to provide a communication access point between the nodes and an external network (remote control via internet or other network)*, including at least the Accused Products and Services.*"  (*Id.* at ¶¶ 13, 19, and 25 (emphasis added)).

The italicized language above, which was added in the Amended Complaint, appears to allege that the claimed gateways are akin to Aruba's AirMesh brand routers.  F2VS's Amended Complaint also appears to allege that "Access Points" comprise the claimed "nodes."  However, F2VS fails to allege which Aruba product is akin to either the "Access Points" or the "nodes," both terms that appear to be lifted directly from the claims.  In other words, the substance of F2VS's direct infringement allegation remains nothing more than an identification of the accused routers with respect to the claimed "gateway" followed by a paraphrasing of the claim language.

While the Amended Complaint purports to include an "example" of how Aruba's products infringe, the example fails to explain how any of the Accused Products form the "self-configuring wireless network" required by the claims.  The quoted example, taken from Aruba's marketing materials, states only that "Aruba AirMesh wireless mesh routers allow industrial enterprises and municipalities to establish reliable network connectivity almost anywhere.  Intelligent routing delivers scalable, reliable networking services, and a multi-radio architecture delivers massive capacity."  (*Id.* (quoting Ex. E. at 2)).  F2VS fails to allege how this purported example discloses the claimed network arrangement or any of the other

6

missing features of the claims. The substance of F2VS's direct infringement allegations is unaltered: a generic identification of the Accused Products followed by an abbreviated summary of the claims. The allegations lack the requisite detail to make infringement plausible, including the existence or identification of any particular accused network; identification of which products are alleged to satisfy the recited nodes, external network, and others; and an explanation of how the Accused Products satisfy the claim limitations.

### D.       F2VS's Induced Infringement Allegations

F2VS's induced infringement allegations are equally generic and fail to address the deficiencies noted in Aruba's original Motion to Dismiss.  Paragraphs 14, 20 and 26 are substantially the same for each Asserted Patent and represent the totality of F2VS's induced infringement allegations.  At best, F2VS's allegations amount to an assertion that Aruba has known of the Asserted Patents since the Original Complaint was filed, but has continued to sell the Accused Products and Services and instruct its customers on how to use those products in their ordinary course.  F2VS does not address or acknowledge that Aruba has not sold or offered for sale the Accused Products since at least the date of the Original Complaint.  Instead, F2VS's only amendments are a sentence indicating that unidentified Aruba customers constitute direct infringers and a bare citation to an Aruba marketing brochure. (*Id.* at ¶¶ 13, 19, and 25).  Among other things, the allegations fail to identify (i) an accused network that meets the limitations of any asserted claim; (ii) an Aruba customer that has been induced into purchasing or using a directly infringing network comprised of network products; and (iii) any factual basis from which it can be inferred that Aruba possesses a specific intent to encourage its customers' infringement.  F2VS does not allege pre-suit knowledge of its patents.

7

### III.    ARGUMENT

#### A.    Applicable Pleading Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see* Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require "detailed factual allegations," "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Thus, Rule 8(a)(2) "demands  more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. at 678.  To determine whether a pleading meets the Rule 8(a)(2) standard, the court conducts a two-part analysis.

First, the court should identify and disregard legal and factual conclusions "that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  The court also should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id*. at 678; *see also Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do").  The court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). The court only accepts as true all well-pleaded factual allegations.  *See Iqbal*, 556 U.S. at 678–79.

Second, the court must decide "whether [the well-pleaded facts] plausibly give rise to an entitlement to relief."  *Id*. at 679.  In determining whether a claim is plausible, the court must distinguish between allegations that are "merely consistent with" liability (in which case, the claim "stops short of" being plausible) and allegations "that allow[] the court to

8

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556); *McRo, Inc. v. Rockstar Games, Inc.*, C.A. No. 12-1513-LPS-CJB, 2014 WL 1051527, at *6 (D. Del. Mar. 17, 2014) (dismissing indirect infringement claims under *Twombly* and *Iqbal* because the "assertion of infringing use . . . [was] in reality little more than a rephrasing of a portion of the language of [the asserted claim]"). Sufficient facts must be alleged to "nudge[]" "claims across the line from conceivable to plausible" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678. The court should not, however, "indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064–65 (9th Cir. 2008).

When ruling on a motion to dismiss, a district court may consider a "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The rationale is that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Id.* (citation omitted).

Since the Federal Rules of Civil Procedure were amended to abrogate Form 18, the infringement pleading standard has gained additional clarity. Both direct and indirect infringement claims must now satisfy the plausibility standard of *Twombly* and *Iqbal* to survive a motion to dismiss. *Raindance Techs., Inc. v. 10X Genomics*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016). Thus, a complaint should include a "coherent theory of which claims are allegedly infringed and how the accused products practice . . . each of those claims' elements." *Atlas IP, LLC v. Exelon Corp.*, C.A. No. 15-10746, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997) (doctrine of equivalents, like literal

9

infringement, should be applied on an element-by-element basis). And a complaint that fails to plausibly allege how each element of an asserted claim is met should be dismissed. *See Raindance*, 2016 WL 927143, at *2 (granting motion to dismiss where there was "nothing in the complaint . . . that hints at the role of [a claim element] in Defendant's [explicitly identified] products"); *Asghari-Kamrani v. United Servs. Auto. Ass'n*, C.A. No. 2:15-cv-478, 2016 WL 1253533, at *4 (E.D. Va. Mar. 22, 2016) (allegations of direct infringement must "identify with sufficient particularity how each allegedly infringing feature of [the defendant's product] infringes the patent" for each claim that is allegedly infringed). Induced infringement claims are held to a similar pleading standard. *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS, 2012 WL 6044793, at *14 (D. Del. Nov. 13, 2012), report and recommendation adopted sub nom; *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 2295344 (D. Del. May 24, 2013).

### B.     F2VS's Direct Infringement Claims Should Be Dismissed

F2VS's direct infringement claims should be dismissed because F2VS fails to allege sufficient facts to state a plausible claim for relief. As detailed above, F2VS's threadbare allegations consist of nothing more than a list of accused products and a rephrasing of a portion of the language of the asserted claims. These allegations are plainly deficient. *See Medsquire LLC v. Spring Med. Sys. Inc.*, No. 2:11–cv–04504–JHN–PLA, 2011 WL 4101093, at *3 (C.D. Cal. Aug. 31, 2011) (bare allegation that defendant infringed "by making, using, selling, and/or offering for sale its [product], which embodies and/or otherwise practices one or more claims" of the patent failed the *Iqbal-Twombly* standard); *see also McRo*, 2014 WL 1051527, at *6.

The Amended Complaint lacks any allegations as to how the accused routers allegedly satisfy or meet each of the claim limitations, as required. *See Atlas IP LLC*, 2016 WL 1719545, at *3 (dismissing allegations of direct infringement where complaint recites

10

only some of the elements of the asserted claim). Although the Amended Complaint now alleges that "mesh routers" are akin to the claimed "gateway," there is no allegation as to how any "mesh routers" are "communicatively coupled" to a network of nodes and an external network to provide a path of communication between the two.

Likewise, F2VS does not allege what accused Aruba products comprise the claimed "nodes." While the Amended Complaint purportedly clarifies that the "nodes" may be "Access Points," F2VS fails to shed any light as to which Aruba products it believes are akin to the "nodes" or "Access Points." Indeed, apart from this purported clarification, F2VS only uses the term "Access Points" within its Amended Complaint when paraphrasing the claims. Nor does F2VS allege how those unidentified Aruba products would be incorporated into a self-configuring wireless network and organized to communicate with each other in a particular manner. The Amended Complaint also fails to identify any actual network used or sold by Aruba.

According to F2VS, the claims at least include a self-configuring wireless network that incorporates a group of virtual nodes coupled to a gateway to provide a communication access point between the nodes and an external network. But rather than identifying a network of nodes and gateways arranged as claimed, F2VS's allegations merely equate "mesh routers" with the claimed gateway while parroting the language of the claims. Such allegations are plainly insufficient and F2VS's brief reference to Aruba marketing material fails to remedy the problem. (Am. Compl. ¶¶ 13, 19, and 25 (citing Ex. E)). Specifically, F2VS fails to allege how "connectivity" and "networking services" via Aruba's mesh routers provide the claimed network arrangement of self-configuring nodes and gateways—let alone any of the other features of the claims.

The Amended Complaint also fails to include any factual allegations supporting F2VS's claim for infringement under the doctrine of equivalents. *See Macronix Int'l Co. v.*

11

*Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (dismissing infringement claims where it was not clear "what [was] alleged to be literally infringed and what [was] alleged to be infringed by equivalents."); *see also Ziemba v. Incipio Techs, Inc.*, No. 13-5590 (JLL), 2014 WL 4637006, at *3 (D.N.J. Sept. 16, 2014). Here, as in *Macronix*, the Amended Complaint alleges that Aruba "has infringed and continues to infringe the '981 Patent [and the '749 and '019 patents] literally or under the doctrine of equivalents," without explaining which products, claims, or limitations are alleged to be satisfied by equivalents, or why. (Am. Compl. ¶¶ 13, 19, and 25). As a result, the Amended Complaint fails to notify Aruba of even a single claim limitation alleged to be satisfied under the doctrine of equivalents, let alone provide factual allegations supporting those claims.

As this Court has found, the absence of these details render the infringement allegations implausible. *See Raindance*, 2016 WL 927143, at *2 (granting motion to dismiss where there was "nothing in the complaint . . . that hints at the role of [a claim element] in Defendant's [explicitly identified] products."); *see also Atlas IP LLC*, 2016 WL 1719545, at *3. Because F2VS's Amended Complaint does not provide sufficient factual allegations based on which a plausible direct infringement claim—whether literal or infringed by equivalents—can be made, its claims for direct infringement should be dismissed. *See Raindance*, 2016 WL 927143, at *2; *Fifth Market, Inc. v. CME Grp., Inc.*, C.A. No. 08-520 GMS, 2009 WL 5966836, at *1 (D. Del. May 14, 2009) (granting motion to dismiss because plaintiff merely defined the allegedly infringing products and methods as those "covered by the claims of the asserted patents"); *see also Anza Tech., Inc. v. ARRIS Grp, Inc.*, 2016 WL 8732646, at *5 (S.D. Cal. Nov. 4, 2016) (granting motion to dismiss in part because "Amended Complaint appears to lack facts demonstrating that each limitation of the asserted claims has been satisfied").

## C.     F2VS's Induced Infringement Claims Should Be Dismissed

F2VS's indirect infringement claims also should be dismissed because F2VS fails to allege sufficient facts with respect to third-party direct infringement and Aruba's intent to induce infringement.  "To adequately plead a claim of induced infringement, a plaintiff must demonstrate that 'the plaintiffs patent is directly infringed,' 'allege that the defendant knew of the patent[,] and [allege] that the induced acts constitute patent infringement.'"  *IP Commc'ns Sols., LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134-GMS, 2017 U.S. Dist. LEXIS 51770, at *9 (D. Del. Apr. 5, 2017) (internal citations omitted).  "While it is possible for a complaint to put a defendant on notice of both the patents and the way in which its products and/or methods are alleged to infringe those patents such that the defendant could be deemed to have knowledge that it was inducing acts that constitute direct infringement," a plaintiff does not adequately plead a claim for induced infringement where the complaint "contains only conclusory allegations that do not explain to [the defendant] how its products and methods infringe the Asserted Patents, or how it is inducing third parties to use those products and methods in an infringing manner."  *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*, No. CIV.A. 14-6650, 2015 WL 3755223, at *8 (E.D. Pa. June 15, 2015).

Stated another way, in the absence of an adequately pled underlying act of direct infringement, there is no claim for induced infringement.  *See Endo Pharms. Inc. v. Actavis Inc.*, C.A. No. 14-1381-RGA, 2015 WL 5580488, at *3 (D. Del. Sept. 23, 2015), report and recommendation adopted, C.A. No 14-1381-RGA, 2015 WL 7253674 (D. Del. Nov. 17, 2015) ("As a precursor to stating a claim for indirect infringement, inducement, or contributory infringement, a plaintiff must 'plead[ ] facts sufficient to allow an inference that at least one direct infringer exist[s].'"); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *Princeton Dig. Image Corp. v. Ubisoft Entm't SA*, C.A. No. CV 13-335- LPS-CJB, 2016 WL 6594076, at *10 (D. Del. Nov. 4, 2016).

13

Here, F2VS fails to sufficiently allege direct infringement by an Aruba customer that Aruba plausibly "induced" into infringing. *Network Managing Solutions, LLC v. AT&T INC. et al.*, C.A. No. 1:16-cv-00295-RGA, 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017) (dismissing indirect infringement allegation because, among other things, "Plaintiff has failed to identify in any manner, directly or by implication, some third party that actually infringes."). F2VS also fails to sufficiently allege direct infringement during the time period in which F2VS alleges that Aruba had knowledge of the Asserted Patents. Rather, F2VS simply alleges, without further detail, that Aruba's customers purchase the Accused Products and Services, use them "in a manner that infringes the [Patents-in-Suit]," and that Aruba has had knowledge of the Asserted Patents as of the date of the Original Complaint. (Am. Compl. at ¶¶ 14, 20, and 26). But, F2VS does not identify, as it must, any Aruba customer that directly infringes through the use of the accused Aruba products; the allegedly infringing network used by Aruba's customer; how a network of Aruba products satisfies the limitations of the asserted claims; or otherwise how an Aruba customer's use of those products constitutes infringement. *See Network Managing Solutions, LLC*, 2017 WL 472080, at *3.

Moreover, Aruba has not sold or offered for sale the Accused Products since at least the date of the Original Complaint, as confirmed by Aruba's website and discussed in footnote 1 above. (*See* Exs. I–N). It is appropriate for the Court to consider this information on Aruba's website since F2VS's Amended Complaint repeatedly relies on Aruba's website, as the sole source of support for its sparse infringement allegations. (Am. Compl. at ¶ 11 (citing Aruba's website and attaching Exhibits D–G)). Accordingly, Exhibits I–N, which are simply various portions of Aruba's website, are all "document[s] integral to or explicitly relied upon" in F2VS's Amended Complaint and can be considered by the court under *In re Burlington*, 114 F.3d at 1426. These exhibits show that Aruba had ceased any sale of the

14

Accused Products before the date on which F2VS alleges that Aruba was aware of the Asserted Patents.

F2VS's allegations of Aruba's post-Complaint intent are equally insufficient. For example, the Amended Complaint avers, "[b]ased upon public information, Aruba knew that its actions . . . would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using the Accused Products and Services." (Am. Compl. ¶¶ 14, 20, and 26). Yet, Aruba has not sold or offered for sale the Accused Products at least since the date of the Original Complaint. (Ex. I at 14; Exs. J–N).

F2VS also summarily asserts that Aruba's customers are induced to infringe through Aruba's website:

> Based upon public information, Aruba specifically intends its customers to use its products and services in such a way that infringes the '981 Patent [or the '749 and '019 patents] by, at a minimum, providing and supporting the Accused Products and Services and instructing its customers on how to use them in an infringing manner, at least through information available on Aruba's website including information brochures, promotional material, and contact information. . . . Aruba offers design services to select, deploy and integrate Aruba's products to assist its customers in establishing and using mesh systems.

(Am. Compl. ¶¶ 14, 20, and 26). However, F2VS does not explain how a customer's use of Aruba's products infringes, such that Aruba's website can be instructive as to infringement by Aruba's customers. F2VS also does not allege that Aruba provides customers with all of the components necessary to build the mesh system or claimed network that must be communicatively coupled to an external network. Quite simply, F2VS does not connect the claims in the Patents-in-Suit to Aruba or its customers. In the absence of this detail, an intent to cause infringement cannot be found, and a plausible induced infringement claim cannot be made. *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. CV 13-2052-LPS, 2014 WL

15

4675316, at *5 (D. Del. Sept. 19, 2014) (no post-suit knowledge even where accused products were identified in complaint and FAC because neither document contained "factual allegations regarding how these products are said to infringe the Asserted Patents when utilized by the respective alleged direct infringers"); *see also MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012) ("The court need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (internal quotation marks omitted); *M2M Solutions LLC v. Telit Commc'ns PLC*, C.A. No. 14-1103, 2015 WL 4640400, *4-*5 (D. Del. Aug. 5, 2015).

Finally, F2VS has pled only boilerplate allegations that merely state the legal conclusion that Aruba had the specific intent to cause infringement of the Patents-in-Suit.[2] "It has not pled any facts that would entitle it to a reasonable inference that its conclusory allegations with respect to specific intent are true." *Bonutti*, 2015 WL 3755223, at *9. Thus, even if F2VS "had adequately alleged knowledge of infringement, which it has not, its claim for induced infringement would still fail under *Twombly* and *Iqbal* because [F2VS] has not adequately pled facts from which the Court could reasonably infer specific intent." *Id.*

By failing to identify the act(s) of direct infringement by Aruba's customers that were induced by Aruba and facts suggesting an intent to infringe, among other deficiencies, F2VS's Amended Complaint fails to state a plausible claim for induced infringement. *See id.*, 2015 WL 3755223, at *8 (dismissing induced infringement claim where complaint was

---

[2]     Further evidencing that F2VS's allegations are little more than boilerplate, F2VS's induced infringement allegations against Aruba are all but identical to those it has leveled against Ruckus Wireless and Qualcomm in related suits before this Court.  Original Complaint and Amended Complaint at ¶¶ 14, 20, 26, *F2VS Techs., LLC v. Ruckus Wireless*, C.A. No. 17-cv-00756-RGA (D. Del. Jun. 13, 2017); Complaint at ¶¶ 14, 20, 26, *F2VS Techs., LLC v. Qualcomm Techs., Inc.*, C.A. No. 17-cv-007556-UNA (D. Del. Jun. 13, 2017).

16

devoid of any allegations that explained precisely what plaintiff's patented products do or how they are used, or that concern statements made in alleged instructional materials that could be tied to patented methods).  As a result, F2VS's induced infringement claims should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Aruba respectfully requests that the Court dismiss F2VS's Amended Complaint (D.I. 11) for failure to state a claim upon which relief can be granted.

17

October 18, 2017

MCCARTER & ENGLISH, LLP

*/s/Daniel M. Silver*
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Defendant*

OF COUNSEL:

David Garr
Michelle L. Wallace
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
dgarr@cov.com
mwallace@cov.com

18